Overton, J.
 

 delivered the following statement of the case, and opinion of the Court: —
 

 The only question for the decision of the Court, on this record, is the construction of the Act of the April session, 1809, ch. 12, § 2.
 

 The plaintiff made his entry for one hundred and eighty-three acres of land on the 3d day of June, 1809, which is admitted to he special; and on the 11th day of July, 1810, obtained a grant.
 

 The defendants’ claim in consequence of an occupancy, under the above-mentioned Act; and it is admitted they were actually settled on the land now in dispute, on the 1st of January, 1809. Their entry was made on the 2d of March, 1810, for one hundred acres; but it appears that there were only eighty-three acres actually vacant, the adjacent lands having been appropriated previous to the first day of January, 1809, and remained so appropriated at the date of the defendant’s survey and entry ; from which it appears that seventeen acres of the defendant’s claim, are included within an elder entry.
 

 Under all the circumstances of this .case, were the defendants in such a situation as to avail themselves of the indulgence allowed to occupants ? If they were, their claim is certainly the best. It is true, their entry is younger than the plaintiff’s, but they entered within the time given them by the Legislature. During that time all other individuals were postponed;
 
 *157
 
 or in other words, they could not enter or appropriate until it could he seen whether the occupant would or not. Considering the settlement of an individual on the lands of the State, as imposing on the State no moral obligation to make a legal right; and that reasons of state have induced the Legislature to exclude an opportunity of appropriating lands thus settled, by citizens at large, in derogation of a common right, it would seem that the laws on this subject, so far as they go to give this preference, cannot be construed by analogy or parity of reasoning. This idea is pecu-liary enforced by adverting to the situation of the State, when the offices for appropriating lands were opened. Claims on the vacant lands in this State had originated long since under the laws of North Carolina, — these claims were unsatisfied when the offices opened, and many of them belonged to citizens of other States. Individuals had previously settled on these lands, and it was a consideration of policy, with the State, whether they would permit the individuals who had voluntarily settled to appropriate in exclusion of others who had warrants, or claims on the State. They provided that if the settlers would procure warrants, and enter their improvements, upon these warrants, within two years from the passage of the Act, they should hold in exclusion of any entry or claim originating afterwards; provided the improver or occupant surveyed his claim within twelve months, .to include his improvement in the centre, “ of not less than one hundred acres, nor more than three hundred acres.”
 

 The Legislature have passed several laws on this subject. The Act of 1806, provides that improvers shall have a preference in procuring a title to tracts that shall not exceed two hundred acres. By the Act of 1807, ch. 2, § 36, a similar preference is given to occupants in obtaining titles for any quantity
 
 “
 
 not exceeding three hundred acres, nor less than one hundred acres, unless prevented by interfering claims, to include his or their improvement.”
 

 In this case, it is insisted, on the part of the plaintiff, that the legislature did not design that an improver should have this preference, unless he could procure land adjacent to his improvement, at least to the amount of one hundred acres clear of older claims, or those which had been previously entered or granted; and that unless there was that quantity of vacant and unappropriated land, the occupant should not have a preference, but should be on a footing with other citizens, viz. by making the first entry, he should have the preference.
 

 In answer, it has been urged that the primary object of the Legislature was that the occupant should have the preference contemplated, provided he would, in procuring a title, extinguish a claim on the State of- at least one hundred acres; or, in other words, enter a warrant to that amount; and that it was immaterial to the Legislature whether a part of the one hundred acres should-be run out, or surveyed within the lines of or interfere
 
 *158
 
 with an older entry. It was uncertain whether an enterer of land would ever procure a grant; and if he did not, it is insisted that the defendant’s claim would be good as to the seventeen acres. He may not even think proper to dispute with the defendant who has the oldest grant. It is a matter to be settled between him and the defendantit cannot be brought into view in a contest between the claim of the plaintiff and defendants in this case.
 

 In discussing this subject it is material to consider the laws of North Carolina and Tennessee in relation to entries, surveys, and grants.
 

 All the acts, both of North Carolina and Tennessee, had in view to authorize entries for lands which had not been appropriated by patent or entry previously. This is obvious, recurring particularly to the language of the acts. The Legislature never designed to do that which they had no power to do, — dispose of lands which had been previously sold and paid for.
 

 It was manifestly the meaning of the laws of North Carolina that the oldest special enterer should have a preference in having a survey made and a grant thereon. It was made the duty of surveyors to run out the oldest entries; and that, in surveying younger ones, they should not interfere, but be bounded on the lines of surveys made in pursuance of older entries. See the Acts of 1777, ch. 1, § 10 ; 1778, ch. 3, § 2 ; 1779, ch. 4, § 7 ; 1783; 1784, ch. 14, § 7 ; 1786, ch. 20 ; 1787, ch. 23.
 

 The same principle is preserved in the laws of this State. See Acts of 1807, ch. 2, §§ 40, 43, 44. It is also adverted to by the Legislature in the Act of 1807, ch. 2, § 36, by which occupants were first restricted in the quantity to be appropriated, if not constrained to take less by older claims.
 

 In the Act under consideration this provision is omitted; and in construing an act respecting a provision derogatory to the principles of common right, we cannot presume the Legislature intended the same that is expressed in the Act of 1807. Had they designed to give this exclusive privilege to the persons who could not obtain one hundred acres of vacant land, tbey would' have expressed themselves to that effect, as they have done in the Act of 1807.
 

 It is certainly true, as stated by the defendants’ counsel, that in. running out lands by surveyors, they frequently did not observe the requisitions of the acts by surveying the oldest entries first, and bounding their subsequent surveys on them; but, as the law requires this, we cannot presume that surveyors surveyed younger entries first through design. Such a presumption would overthrow another, which is universally received as law, that every person is presumed innocent of violations of the laws of his country until the contrary appears by proof. This presumption is much stronger in the case of an officer, as a surveyor, who is sworn to do his official duty.
 

 Hence, then, we are constrained to presume that these deviations from
 
 *159
 
 legal principles and commands happened through ignorance of the existence of older adjacent entries, and not through design.
 

 It is absurd to suppose the Legislature passed laws upon principles of this kind. Had they designed so to do, it would have been in the style of complaint, with the enactment of a consequent remedy. They speak of vacant and unappropriated land. That which was already entered was undoubtedly appropriated in the eye of the law. If, then, the person upon whom this exclusive privilege was intended to be conferred was not in a situation to obtain one hundred acres in his survey without violating the injunctions of the law, it cannot be presumed that the Legislature designed he should do so; and consequently his situation did not accord with that designed.
 

 As a question of direct and not incidental discussion, the right of third persons, not parties to the suit, cannot be made a subject of examination ; but this is not the question before the Court. The Legislature, in prescribing rules of conduct, were competent to found them on such a state of things as they thought proper. When they require that certain facts should exist before a right can have its origin, it is of necessity a pertinent inquiry whether these facts did exist or not. This inquiry does not affect the right of any person not a party to the suit; and as the law commands it to be done to attain the ends it has in view, it must be made. In this view it is quite beside the question whether the elder enterer ever does obtain a grant or not.
 

 The judgment of the Circuit Court in favor of the defendants must, therefore, be reversed.